```
            UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF NEW HAMPSHIRE
```

Robson Xavier Gomes, et al.

    v.                                     Civil No. 20-cv-453-LM
                                              Opinion No. 2020 DNH 072

Acting Secretary, U.S.
Department of Homeland
Security, et al.

**O R D E R**

Robson Xavier Gomes, Jose Nolberto Tacuri-Tacuri, and Darwin Aliesky Cuesta-Rojas bring this petition for habeas corpus pursuant to 28 U.S.C. § 2241 and a complaint for declaratory and injunctive relief on behalf of themselves and a putative class of civil immigration detainees housed at the Strafford County Department of Corrections ("SCDOC").  They claim that respondents, the Acting Secretary of the United States Department of Homeland Security, Acting Field Director of Immigration and Customs Enforcement, and the Superintendent of SCDOC, have violated the putative class members' Fifth Amendment Due Process rights by creating or allowing policies and practices at SCDOC, or the lack thereof, that put class members' health at substantial risk of harm.

Pending before the court are petitioners' amended complaint, motion for preliminary injunctive relief and expedited discovery, emergency motion for expedited bail

hearings, and motion to certify the proposed class.  At a hearing on May 1, 2020, the court orally granted petitioners' motion for expedited bail hearings for a group of medically vulnerable putative class members.  Those bail hearings are scheduled to begin today.  At a telephone conference this morning, the court informed the parties that it intended to provisionally certify the proposed class for the purpose of conducting those bail hearings.  Respondents objected to the notion of provisional class certification generally but did not develop specific argument in opposition to provisional certification in this case.  The court will provisionally certify the proposed class for the limited purpose of holding expedited bail hearings for class members.

## STANDARD OF REVIEW

To obtain class certification, the petitioner must establish the four prerequisites of Federal Rule of Civil Procedure 23(a).  See Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 613-14 (1997); Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 38 (1st Cir. 2003).  Rule 23(a) states four threshold certification requirements applicable to all class actions: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy.  See Fed. R. Civ. P. 23(a); Amchem, 521 U.S. at 613.  In addition

to Rule 23(a)'s threshold requirements, a party seeking certification must also show that the action falls into one of the categories outlined in Rule 23(b). Amchem, 521 U.S. at 614. Petitioners seek to certify under Rule 23(b)(2). Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

At this juncture, the court will provisionally certify the class for the purpose of holding expedited bail hearings—a form of preliminary and emergency relief in the context of this case. See Zepeda Rivas v. Jennings, No. 20-CV-02731-VC, 2020 WL 2059848, at *1, 3 (N.D. Cal. Apr. 29, 2020) (provisionally certifying class of civil immigration detainees to facilitate expedited bail hearings); Savino v. Souza, No. CV 20-10617-WGY, 2020 WL 1703844, at *3 (D. Mass. Apr. 8, 2020) (same); cf. Fraihat v. U.S. Immigration & Customs Enf't, No. EDCV191546JGBSHKX, 2020 WL 1932570, at *15 (C.D. Cal. Apr. 20, 2020) (provisionally certifying class for the purpose of granting preliminary injunctive relief). Provisional certification is also necessary because respondents have not yet filed a response to petitioners' motion to certify the class.

3

"Provisional" certification does not lower the bar with respect to the Rule 23(a) and (b) standards; the court must conduct a rigorous inquiry and satisfy itself that the putative class meets those requirements. See Tolmasoff v. Gen. Motors, LLC, No. 16-11747, 2016 WL 3548219, at *6 (E.D. Mich. June 30, 2016); R.I.L-R v. Johnson, 80 F. Supp. 3d 164, 180 (D.D.C. 2015). The court's "provisional" determination is made, however, with the understanding that it "may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C); see also R.I.L-R, 80 F. Supp. 3d at 180.

## DISCUSSION

Petitioners propose certification of the following class: "all individuals who are now held in civil immigration detention" at SCDOC. Doc. no. 14-1 at 9. The proposed class representatives are the named petitioners: Gomes, Tacuri-Tacuri, and Cuesta-Rojas. Respondents agreed to release Tacuri-Tacuri and Cuesto-Rojas with conditions on or about April 22, 2020. Doc. no. 22. Gomes remains detained at SCDOC. The court will address the Rule 23(a) and Rule 23(b)(2) requirements below.

I.   Rule 23(a) Requirements

   A. Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." Clough v. Revenue Frontier, LLC, No. 17-CV-411-PB, 2019 WL 2527300, at *3 (D.N.H. June 19, 2019) (quoting Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009)).  Petitioners allege that there are over 60 civil immigration detainees housed at SCDOC. Indeed, Superintendent Brackett testified at the May 1 hearing that there are approximately 75 civil detainees.  Even if this number fluctuates somewhat due to the ingress and egress of detainees, it satisfies the numerosity requirement.

   B. Commonality

Rule 23(a)(2) asks whether there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires proof that all class members "have suffered the same injury." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (internal quotation marks omitted).  This means that the "claim must depend upon a common contention." Id.  That

"common contention" must be "capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.  This "same injury" test "can be satisfied by an instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse."  In re Deepwater Horizon, 739 F.3d 790, 810-11 (5th Cir. 2014); see also Parsons v. Ryan, 754 F.3d 657, 678 (9th Cir. 2014).

Here, petitioners allege that respondents' facility-wide failure or inability to facilitate social distancing at SCDOC violates their Fifth Amendment Due Process rights in two ways: respondents' conduct is deliberately indifferent to a substantial risk of harm to their health; and the conditions of confinement at SCDOC amount to punishment.  The court will focus here only on the deliberate indifference theory.

To prove a deliberate indifference claim, a petitioner must show: (1) the alleged deprivation of medical care is objectively "sufficiently serious"; and (2) the defendant must have a "sufficiently culpable state of mind" that shows "deliberate indifference to inmate health or safety."  Leite v. Bergeron, 911 F.3d 47, 52 (1st Cir. 2018) (internal quotation marks omitted).  A defendant is deliberately indifferent if he

6

subjectively "knows of and disregards an excessive risk to inmate health or safety." Id. (internal quotation marks omitted). "To show such a state of mind, the plaintiff must provide evidence that the defendant had actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented that harm." Id. (internal quotation marks omitted).

Petitioners claim that respondents have subjected the putative class to the same injury: policies and practices (or the lack thereof) that put their health at substantial risk of harm by inhibiting their ability to practice social distancing during the COVID-19 pandemic. Petitioners' deliberate indifference claim thus presents at least two common questions: whether each respondent had actual knowledge of the impending harm or risk posed to the putative class by COVID-19; and whether each respondent failed to take steps that would have easily prevented the harm to detainees. See Fraihat, 2020 WL 1932570, at *18 (finding commonality satisfied to provisionally certify civil detainee class based on common question of whether respondents' systemwide actions or inactions constituted deliberate indifference); Wilson v. Williams, No. 4:20-CV-00794, 2020 WL 1940882, at *7 (N.D. Ohio Apr. 22, 2020) (identifying common question as whether respondents' failure to create safe

7

conditions violated inmates' rights); Savino, 2020 WL 1703844, at *6 (identifying common question as whether the government disregarded the risk posed by COVID-19 to civil detainees by failing to take reasonable measures).  Petitioners need only articulate a single common question to meet the commonality requirement.  Dukes, 564 U.S. at 359.  That requirement is met here.

   C. Typicality

   Next, plaintiffs must show "typicality" or that their claims or defenses are "typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  To be typical, the representative plaintiffs' claims must "arise from the same event or practice or course of conduct that gives rise to the claims of other class members, and [be] based on the same legal theory."  Garcia-Rubiera, 570 F.3d at 460 (internal quotation marks, brackets, and ellipsis omitted).  The representative plaintiffs' claims and those of absent class members need not be identical; they need only "share the same essential characteristics."  Ouadani v. Dynamex Operations E., LLC, ___ F. Supp. 3d. ___, 2019 WL 4384061, at *8 (D. Mass. Sept. 13, 2019) (internal quotation marks omitted).

The named petitioners' claims here are typical of the class.  They arise from the same course of conduct: respondents' facility-wide actions or inactions that have allegedly failed to make living conditions at SCDOC safe during the COVID-19 pandemic.  And their claims are all based on the legal theory that respondents have violated their Fifth Amendment Due Process rights, either by being deliberately indifferent to the substantial risk of harm created by the virus, or by subjecting them to punishment.  Although the impact each class member may experience from respondents' alleged failings may differ, respondents' alleged systemwide failure to implement adequate health and safety measures applies equally across the class.  The typicality requirement is met here.

D. Adequacy

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement has two prongs: (1) "that the interests of the representative party will not conflict with the interests of any of the class members"; and that chosen counsel "is qualified, experienced and able to vigorously conduct the proposed litigation." Clough, 2019 WL 2527300, at *4 (internal quotation marks omitted).

With respect to the first prong, the court has not identified any way in which the proposed class representatives' interests conflict with those of the unnamed class members. Turning to the second prong of the adequacy inquiry, the court is convinced that proposed class counsel, Gilles Bissonette of the American Civil Liberties Union of New Hampshire and Scott O'Connell of Nixon Peabody, LLP, have sufficient experience and qualifications to serve as class counsel. See doc. nos. 14-2 & 14-3.

## II. Rule 23(b)(2) Requirement

An action may be maintained under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." Dukes, 564 U.S. at 360 (internal quotation marks omitted). The court concludes that a uniform, indivisible remedy would be possible in this case. Such remedy might take the form of a

declaratory judgment finding that respondents' policies or practices violate civil detainees' Fifth Amendment Due Process rights, or an injunction requiring SCDOC to reduce the population of detainees (and/or other inmates) to a level that allows for adequate social distancing. See Savino, 2020 WL 1703844, at *8; Fraihat, 2020 WL 1932570, at * 20.

## CONCLUSION

For the following reasons, the court provisionally certifies the proposed class of all individuals who are now held in civil immigration detention at SCDOC for the purpose of facilitating expedited bail hearings of those individuals.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 4, 2020

cc: Counsel of record.