**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Robson Xavier Gomes

    v.                                                     Civil No. 20-cv-00453-LM

US Department of Homeland Security,
Acting Secretary et. al.

**O R D E R**

On May 1, 2020, the court held an eight-hour video evidentiary hearing about the efforts at the Strafford County House of Corrections ("SCHOC") to address the COVID-19 pandemic. At the hearing, the Superintendent of SCHOC, Christopher Brackett, testified about the current conditions at SCHOC, as did Petitioner Gomes and two other detainees. Prior to the hearing, the parties submitted a joint statement of material facts (doc. no. 47) and several exhibits. At the end of the hearing, the court issued a decision orally from the bench that, despite the highly laudable efforts of Superintendent Brackett, the high-risk detainees had made out against respondents a substantial claim of deliberate indifference to their medical needs and were entitled to bail hearings, as occurred in Savino. Savino v. Souza, No. CV 20-10617-WGY, 2020 WL 1703844, at *1 (D. Mass. Apr. 8, 2020); See also Glynn v. Donnelly, 470 F.2d 95, 98 (1st Cir. 1972); Mapp v. Reno, 241 F.3d 221, 230 (2d Cir. 2001);

Bader v. Coplan, No. CIV. 02-508-JD, 2003 WL 163171, at *4 (D.N.H. Jan. 23, 2003)).

At the bail hearings, the respondents will have the burden to prove by clear and convincing evidence that each petitioner is either a danger to the public or a flight risk.  See Hernandez-Lara v. Immigration & Customs Enf't, Acting Dir., No. 19-CV-394-LM, 2019 WL 3340697, at *7 (D.N.H. July 25, 2019).

Many other courts have also held that detainees who have a physical condition that places them at higher risk should they contract COVID-19 are likely to succeed in their due process claims.  See, e.g., Fraihat v. U.S. Immigration & Customs Enf't, No. EDCV191546JGBSHKX, 2020 WL 1932570, at *24 (C.D. Cal. Apr. 20, 2020) (noting that the detention facilities' "month-long failure to quickly identify individuals most at risk of COVID-19 complications and require specific protection" was a reason plaintiffs were likely to succeed in their deliberate indifference claim); Coronel v. Decker, No. 20-CV-2472 (AJN), 2020 WL 1487274, at *6 (S.D.N.Y. Mar. 27, 2020) (finding respondents were deliberately indifferent to detainees serious, unmet medical needs because government had done "nothing to alleviate the specific, serious, and unmet medical needs of the high-risk Petitioners").[1]

---

[1] A written decision on the findings I summarized orally at the close of the May 1 hearing will be issued later this week.

Today the court is also issuing an order provisionally certifying the class for the limited purpose of scheduling these bail hearings, as occurred in Savino and Zepeda.  See Zepeda Rivas v. Jennings, No. 20-CV-02731-VC, 2020 WL 2059848, at *1 (N.D. Cal. Apr. 29, 2020); Savino, 2020 WL 1703844, at *1.

As noted, at the close of the May 1 hearing, the court explained to the parties that it intended to grant the high-risk habeas petitioners bail hearings.  The court asked the parties to work together to identify detainees who fell within a high-risk category.  The court scheduled three bail hearings for high-risk detainees on May 4, 2020.  The court left it to the parties to determine which detainees had conditions that placed them in a high-risk category and which detainees should receive the first three bail hearings.

Over the weekend, petitioners reviewed the record and identified 19 detainees whom they contend fall within a high-risk category.  Respondents countered that only one detainee on the petitioners' list falls within a high-risk category.  Therefore, rather than convene the three bail hearings that the court ordered to occur on today's date, the court scheduled an emergency status conference via telephone to occur this morning.

During this morning's telephone hearing, respondents informed the court that they had an independent medical expert review the medical files of the 19 detainees identified by

petitioners. The medical expert determined that one detainee's medical conditions made him a "ticking time bomb." Immigration and Customs Enforcement ("ICE") agreed to release this detainee with conditions. However, the medical expert determined that the other detainees were not especially susceptible to COVID-19. The medical expert's determination appears to result from an overly narrow interpretation of the CDC and ERO guidance. For example, petitioners reviewed detainee medical records, identified three detainees as having hypertension or tachycardia, and included these detainees on the list of 19 high-risk detainees. The CDC website on "Groups at Higher Risk for Severe Illness" specifies that "serious heart conditions" such as "heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension, may put people at higher risk for several illness for COVID-19."[2] The same website further explains that COVID-19 is a new disease and there is limited information regarding risk factors for severe disease. Id. However, respondents' medical expert, apparently after reviewing the same detainee medical records, and using the same CDC guidance, determined that hypertension

---

[2] CDC, Groups at Higher Risk for Severe Illness https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 3, 2020).

was not a "serious heart condition" and found that these detainees were not high-risk.[3]

Respondents thus now argue that 18 of the 19 detainees that petitioners have identified do not actually have a medical condition that places them in a high-risk category.  The government intended to have two medical professionals testify that the detainees did not qualify under the CDC guidelines as high-risk.

The court is concerned that respondents' approach to identifying high-risk detainees at SCHOC is too narrow.  In early April, Peter Berg, Assistant Director of Field Operations, sent an e-mail to ICE detention facilities ordering them to conduct an internal review to identify high-risk detainees and

---

[3] The court recognizes that tachycardia is not explicitly included on the CDC list of "serious heart conditions" and that hypertension and pulmonary hypertension may be medically distinguishable.  However, the ERO guidance document identifies "heart disease" as one of the categories of chronic illnesses that make detainees immune-compromised.  Furthermore, medical authorities recognize that for individuals with hypertension, "'COVID will cause a systemic reaction in the body of a patient that already has risk.'"  See CNN, "Those with high blood pressure are at a greater risk for Covid-19. Here's what you need to know to protect yourself" https://www.cnn.com/2020/04/17/health/blood-pressure-coronavirus-wellness/index.html (quoting Dr. Maria Carolina Delgado-Levievre, Assistant Professor of Medicine at the University of Mimi's Miller School of Medicine).

"re-assess custody."[4] This e-mail, which is attached to ICE's Enforcement and Removal Operations ("ERO") Pandemic Response Requirements,[5] explained that because certain conditions place detainees at a higher-risk for serious illness from COVID-19, detention facilities should identify high-risk detainees and review their cases "to determine whether continued detention remains appropriate in light of the COVID-19 pandemic." Id. The ERO guidance expanded on the list of categories that the CDC has deemed to be at potentially higher-risk for serious illness from COVID-19, and directed field officers to "re-assess custody" for the following detainees:

- Pregnant detainees or those having delivered in the last two weeks
- Detainees over 60 years old
- Detainees of any age having chronic illnesses which would make them immune-compromised, including but not limited to:
    - Blood Disorders
    - Chronic Kidney Disease
    - Compromised immune system (e.g., ongoing treatment such as chemotherapy or radiation, received an organ or bone marrow transplant, taking high doses of corticosteroids or other immunosuppressant medications)
    - Endocrine disorders
    - Metabolic disorders
    - Heart disease
    - Lung disease

---

[4] April 4, 2020 e-mail from Assistant Director Peter Berg, Enforcement and Removal Operations, Updated Guidance: COVID-19 Detained Docket Review, https://www.ice.gov/doclib/coronavirus/attk.pdf (last visited May 3, 2020) (emphasis added)

[5] ICE's Enforcement and Removal Operations COVID-19 Pandemic Response Requirements (available at: https://www.ice.gov/coronavirus) (Last visited May 3, 2020)

6

> o Neurological and neurologic and neurodevelopment
>   conditions

Id. (emphasis added).  The guidance states that the "presence of one of the factors listed above should be considered a significant discretionary factor weighing in favor of release." Id. (emphasis added).  The guidance, like the CDC website, indicates that this list of conditions is non-exhaustive.  The guidance also contains links to further information to assist ICE detention facilities, such as SCHOC, in making these critical and potentially "life or death" decisions.

Thus, ICE facilities were directed a month ago to identify high-risk detainees.  On May 1, 2020, the court ordered respondents to work with petitioners to identify high-risk detainees.  And now the court has learned that respondents are narrowly interpreting the guidelines such that evidence from detainee medical files that indicates a detainee suffers from hypertension, a heart arrhythmia, or high blood pressure does not, in the government's view, qualify that detainee as having a high-risk condition.

As the court stated on the record during the May 1, 2020 hearing, and reiterated during today's telephone call, detainees who have conditions which place them at higher risk for severe illness from COVID-19 have demonstrated a substantial claim of

constitutional error.  These detainees are eligible to receive bail hearings.

Going forward, if detainees have objective evidence that they have a medical condition listed on the CDC's "Groups at Higher Risk for Severe Illness" website,[6] or contained on the ERO guidance document,[7] the court will accept that evidence as establishing a prima facie case that the detainee has that medical condition.  If respondents wish to rebut petitioners' prima facie case with evidence that a detainee's claimed medical condition is false or fabricated, or is obviously excluded from the CDC/ERO guidance, the court will allow respondents to attempt to rebut the prima facie case.  A retained medical expert is not necessary, however, to make these screening decisions.  Nothing in the ERO guidance suggests that the guidelines are to be given a narrow construction—as though the detainee were applying for social security benefits.

---

[6] CDC,  Groups at Higher Risk for Severe Illness https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 3, 2020).

[7] April 4, 2020 e-mail from Assistant Director Peter Berg, Enforcement and Removal Operations, Updated Guidance: COVID-19 Detained Docket Review, https://www.ice.gov/doclib/coronavirus/attk.pdf (last visited May 3, 2020).

In light of ERO's own guidance to detention facilities to "re-assess custody" for high-risk detainees,[8] and the extraordinary risk COVID-19 presents to high-risk detainees, the court reminds respondents that it is not in the interest of SCHOC, its detainees, or its staff to keep high-risk detainees in an institutional setting if these individuals do not pose a flight risk or danger to the community.  Reducing the population at detention facilities so that all who remain (including staff) may be better protected, is of interest not just to SCHOC but to the public at large.

Counsel shall confer and give the court's case manager a list of detainees that counsel can agree state a prima facie case of being in a high-risk category.  If the respondents do not intend to attempt to rebut that prima facie case, the court will immediately schedule bail hearings for those detainees. Should respondents intend to attempt a rebuttal of the prima facie case, they should immediately notify opposing counsel and the court's case manager.  The court will schedule a hearing to occur via telephone to rule on whether the detainee qualifies for a bail hearing.  Such a telephonic hearing will likely be sealed to protect those detainees' private medical information.

---

[8] April 4, 2020 e-mail from Assistant Director Peter Berg, Enforcement and Removal Operations, Updated Guidance: COVID-19 Detained Docket Review, https://www.ice.gov/doclib/coronavirus/attk.pdf (last visited May 3, 2020)

Finally, during today's telephone conference, the court set up a procedure to handle confidential medical information at upcoming bail hearings.  Specifically, the court will schedule a telephone conference with counsel and the detainee at issue to discuss the confidential medical information.  The transcript of the call will be sealed.  Counsel should be prepared to discuss the manner in which counsel and the court shall refer in the public record to the particular diagnosis (or health issues) so that the public has an understanding of the generic diagnosis (or health issue) without hearing all of the private details related to that health issue.  If necessary, the court will revisit this procedure and make changes. Counsel agreed that the proposed procedure properly balances the individual detainee's right to privacy with the public's right to access this critical information.

The court held a bail hearing this afternoon for the one detainee that all parties agreed at the telephone conference has a medical condition that places him in a high-risk category.  The court denied that detainee's bail request for the reasons stated on the record.

**SO ORDERED.**

_____
Landya McCafferty
United States District Judge

May 4, 2020
cc:  Counsel of Record.