**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

Robson Xavier Gomes

    v.                                    Civil No. 20-cv-453-LM
                                                  Opinion No. 2020 DNH 085
US Department of Homeland Security,
Acting Secretary et. al.

**O R D E R**

On May 18, 2020, the court held a hearing on petitioners'
emergency motion for relief regarding 8 civil immigration
detainees whom respondents intended to transfer out of Strafford
County House of Corrections (SCHOC) on May 19, 2020.  Doc. no.
122, as amended by doc. no. 131.  The court also heard arguments
on petitioners' emergency request for an injunction halting
further transfers of ICE detainees into the SCHOC.  Doc. no.
132.

I.   Petitioners' Requests Regarding 8 Transfers out of SCHOC

   On May 14, petitioners submitted an emergency motion (doc. no.
122) seeking the following injunctive relief:

    1) require respondents to disclose specific information
       prior to transferring ICE detainees from SCHOC; and

    2) prevent ICE from transferring any ICE detainees to any
       other facility for non-removal purposes; or

    3) give each detainee a bail hearing prior to transfer.

On May 16, after a detainee at SCHOC tested positive for COVID-19, the first confirmed case for an inmate at the facility, petitioners filed two additional motions.  First, petitioners filed a motion seeking discovery about the detainee who tested positive and SCHOC's contact tracing, testing, and quarantine capacities.  Doc. no. 133.  Prior to the May 18 hearing, respondents rendered that motion moot by disclosing the requested information.

Second, petitioners filed an addendum to their request for emergency relief as to the 8 detainees being transferred out of SCHOC.  Doc. no. 131.  In light of the positive COVID-19 test, petitioners withdrew their request that ICE not transfer any detainees to other facilities for non-removal purposes because some detainees may prefer to be transferred out of the facility. Petitioners added requests for injunctive relief and requested the following order:

A. When ICE intends to transfer a class member for non-removal purposes, ICE shall provide the following information to Petitioners' counsel 72 hours prior to transfer to ensure that the class member's rights are protected: (i) where ICE intends to transfer the detainee, (ii) whether that facility has confirmed COVID-19 cases among staff or detainees, (iii) whether the transferred individual will be housed in single or congregate cells in that facility, (iv) the percentage capacity of the facility and whether it is significantly less than the current capacity at the SCDOC, and (v) whether the detainee has any indication in his or her entire ICE medical file reflecting medical vulnerability according to the Court's May 4,

2

2020 criteria (*see* Docket No. 52) in determining
medical vulnerability and, thus, entitlement to bail
hearings; and

B. For any detainee who ICE intends to transfer for
non-removal reasons, any such detainee shall be
provided an immediate bail hearing before this Court
prior to transfer;

C. ICE should not transfer any detainee for any reason
before that detainee receives a test for COVID-19
infection and provides the negative outcome of the
test to the Court, even where bail has been denied for
the detainee. If an individual declines to be tested,
then the individual may be moved so long as it is
compliant with ICE internal protocols; and

D. Any detainee released by ICE in its discretion or
by this Court on bail shall be given an immediate test
for COVID-19 at ICE's expense. If there is a positive
test, the detainee should be immediately transported
to a nearby hospital where the detainee can receive
appropriate medical care at ICE's expense.


Paragraph A

    With respect to petitioners' request in paragraph A,

respondents agreed during the hearing that at least 48 hours

before a detainee from SCHOC is transferred to another facility,

they will inform petitioners:

    1) Which field office and, if known, which facility the
       detainee will be transferred to;

    2) Whether any facility under the authority or within the
       jurisdiction of the field office has any confirmed COVID-
       19 cases among those who work or are detained at the
       facility and, if so, which facility and how many COVID-19
       positive individuals are present;

    3) The percentage capacity of the transferee facility at the
       time of transfer—or facilities operated by the field

office at the time of transfer—and how that percentage
compares to the capacity at SCHOC at the time of
transfer; and

4) Whether there is any indication in a detainee's medical
record that the detainee is medically vulnerable.

Respondents are unable to provide some of the additional
information that petitioners requested.  For example,
respondents cannot inform petitioners whether a transferred
detainee will be housed in a single or congregate cell because
that information is not known until a detainee reaches the
receiving facility.  Respondents also assert that ICE does not
maintain any sort of cumulative medical records for detainees in
its custody.  Surprisingly, ICE does not transfer medical
records from one facility to another when detainees are
transferred.  When a detainee is transferred into SCHOC, while
this case is pending, the court encourages respondents to ask
the sending facility to transfer any detainee medical records
that are in the custody or control of ICE or the sending
facility.

Although respondents argued that petitioners could discover
COVID-positive data from ICE's "confirmed cases" coronavirus
website, see https://www.ice.gov/coronavirus, petitioners
asserted that the website is not up to date and only includes
data about ICE employees.  Thus, the website does not include
information about employees that work at a facility like SCHOC

because those employees work for Strafford County as opposed to
ICE.  Indeed, as of May 19, 4 days after a medical records
administrator at SCHOC tested positive for COVID-19, and three
days after a detainee tested positive, SCHOC was still not
listed on the ICE website as a facility with a confirmed case of
COVID-19.  On May 20, the ICE website stated one detainee at
SCHOC had tested positive for COVID-19 but the website did not
indicate that a staff member who works at SCHOC had also tested
positive.  Counsel for respondents agreed to inquire whether
additional information may be available about the presence of
COVID-19 at receiving facilities from other sources.  If
additional information is available, respondents agreed to
disclose this information to petitioners.


Paragraphs B & D

     In light of respondents' agreement to make the above
information available, petitioners withdrew their request in
paragraph B that all detainees receive bail hearings prior to
transfer.  Petitioners also withdrew the request in paragraph D
that all detainees released from SCHOC by ICE or the Court be
tested for COVID-19.  Petitioners will renew these requests on a
case-by-case basis as deemed necessary.

Paragraph C

This leaves petitioners' request that ICE:

[N]ot transfer any detainee for any reason before that detainee receives a test for COVID-19 infection and provides the negative outcome of the test to the Court, even where bail has been denied for the detainee.  If an individual declines to be tested, then the individual may be moved so long as it is compliant with ICE internal protocols.

Doc. no. 131 at 5.  At the time of the hearing, respondents were reluctant to agree to test all detainees prior to transfer because tests might not be available and there was a possibility of false negatives.  Counsel for respondents agreed, however, to inquire with SCHOC and ICE about the possibility of testing detainees before ICE transfers them to a new facility. Respondents agreed to update the court and petitioners regarding that issue.

The court appreciates that, up until two weeks ago, the limited number of COVID tests in New Hampshire may have restricted SCHOC's ability to test incoming or outgoing detainees.  However, in the last two weeks, more COVID-19 tests are available and anyone experiencing symptoms or anyone who falls into a higher risk category due to age, medical condition, or other risk factor—such as health care workers or long-term care facility workers—may also be tested.  See

https://www.wmur.com/article/get-coronavirus-test-new-hampshire/32479184 (last accessed May 19, 2020 at 4PM).

As the court noted in the May 14, 2020 order, living in a congregate setting such as SCHOC places detainees at a higher risk of being infected with COVID-19.  See doc. no. 123 at 9. Medical experts from the Department of Homeland Security have warned of a "tinderbox scenario" in ICE detention centers where the virus could spread rapidly once introduced.  See doc. no. 5-2 at 4-6; see also doc. no. 5-3 at 4.  Just a few days ago, on Saturday, May 16, 2020, an ICE detainee coming from a facility with known cases of COVID-19 was not tested prior to being transferred to SCHOC and now has become the first detainee at SCHOC to test positive for COVID-19.

The court appreciates that it may not be possible to test everyone in New Hampshire for COVID-19 at this time.  However, SCHOC has three known cases of COVID-19 within the facility (two detainees and one employee) and it is unknown at this time whether additional individuals within the facility may also have COVID-19 because there has not been widespread testing within the facility.  Transferring detainees without first confirming they are COVID-negative is unnecessarily risky to the detainee, those transferred alongside the detainee, and the receiving facility.

In light of these public health risks, the court is hopeful
that respondents will reassess the situation and decide to test
SCHOC detainees before transferring them out of SCHOC and into a
new facility.  However, this decision is one best left to
respondents.  The court is not persuaded it has the authority to
order that ICE perform these tests.

II.   Request to Halt Transfers into the SCHOC

In response to the detainee testing positive for COVID-19,
petitioners filed an emergency motion asking the court to stop
respondents from transferring ICE detainees into SCHOC until the
court resolves petitioners' pending motion seeking the same
relief.  Doc. nos. 132 and 7.  At the hearing, petitioners
modified this request slightly and no longer seek to exclude
short-term "airlift" detainees from entering the facility.[1]
Petitioners argue this relief is necessary in order to prevent
detainees with COVID-19 from entering SCHOC and endangering
class members.  Petitioners further argue that it is necessary
to stop new detainees from entering SCHOC in order to improve
the facility's ability to implement social distancing by

---

[1] "Airlift" detainees are only in the facility for 4 or 5
days and spend their entire stay in quarantine.  See doc. no.
123 at 21.

decreasing—or at least not increasing—the population at SCHOC. Doc. no. 7.

The court recognizes that a limited number of courts have issued preliminary injunctions enjoining ICE from transferring detainees into detention facilities.  See, e.g., Savino v. Souza, No. CV 20-10617-WGY, 2020 WL 2404923, at *11 (D. Mass. May 12, 2020).  But see Roman et al. v. Wolf et al., 20-00768 TJH (C.D. Cal. April 23, 2020), Preliminary Injunction ¶ 1 ("Adelanto shall not accept any new detainees"), rev'd 2020 WL 2188048, at *1 (9th Cir. May 5, 2020) (staying this portion of the preliminary injunction).

At this point, on this record, petitioners have not persuaded the court either that it has the authority to place a judicial blockade on the doors of SCHOC or that such relief is necessary.  Thus, the court denies without prejudice petitioner's emergency request for a preliminary injunction halting transfers into SCHOC.


### CONCLUSION

For the reasons stated above, and on the record during the May 18, 2020 hearing, the court grants in part and denies in part petitioners' motion for relief with regard to the 8 detainees to be transferred out of SCHOC.  Doc. no. 122.  The

court denies petitioners' request for a preliminary injunction halting detainee transfers into SCHOC without prejudice.  Doc. no. 132.  Petitioners' request for discovery is moot.  Doc. no. 133.

**SO ORDERED.**

_____
Landya McCafferty
United States District Judge

May 21, 2020

cc: Counsel of Record.