UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Marcus Vinicius Giotto, et al.</u>

      v.

<u>US Department of Homeland
Security, Secretary, et al.</u>

Civil No. 20-cv-453-LM
Opinion No. 2024 DNH 108 P

## <u>O R D E R</u>

In this class action habeas case brought at the onset of the COVID-19 pandemic, civil immigration detainees confined at the Strafford County Department of Corrections ("SCDOC") asserted that conditions of confinement at SCDOC violated their constitutional rights to be free from an unacceptable risk that they would contract COVID-19 and suffer severe illness. As we approach five years from the pandemic's onset, the parties report that they have reached a settlement and ask the court to grant preliminary approval of their settlement agreement. Doc. no. 805. The proposed settlement agreement, however, requires that the court vacate a finding that defendants[1] likely violated certain class members' constitutional rights. Because the parties have failed to carry their burden to show that vacatur of this finding is justified, their motion (doc. no. 805) is denied without prejudice.

## PROCEDURAL HISTORY

On April 17, 2020, plaintiffs filed an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, and a complaint for declaratory and injunctive

---

[1] The defendants in this action are the Secretary of the United States Department of Homeland Security, the Acting Field Office Director of the Boston Office of Enforcement and Removal Operations within Immigrations and Customs Enforcement, and the Superintendent of SCDOC.

relief on behalf of themselves and a putative class of civil immigration detainees
housed at SCDOC. The amended petition sought to enforce the putative class
members' due process rights, alleging that civil immigration detainees at SCDOC
were being detained in conditions that put them at substantial risk of harm due to
COVID-19. Plaintiffs sought injunctive relief requiring defendants to implement
public health guidance and protocols designed to achieve social distancing and
prevent the transmission of COVID-19.

On May 1, 2020, following an evidentiary hearing, the court orally ruled that
civil immigration detainees at SCDOC with medical conditions placing them at high
risk from COVID-19 were constitutionally entitled to bail hearings. On May 14,
2020, the court issued a written opinion memorializing its May 1 order. See Gomes
v. U.S. Dep't of Homeland Sec., Acting Sec'y, 460 F. Supp. 3d 132 (D.N.H. 2020). In
that order, the court explained that civil immigration detainees with high-risk
medical conditions were constitutionally entitled to bail hearings pending resolution
of this action because they were likely to be successful in arguing that defendants
were deliberately indifferent to the risk that conditions at SCDOC (as of May 2020)
exposed such detainees to an unacceptable risk of death or serious illness from
COVID-19.[2] See id. at 150-52; see also Glynn v. Donnelly, 470 F.2d 95, 98 (1st Cir.

---

[2] The court left open the question of whether civil immigration detainees
without high-risk medical conditions were likely to be successful in so arguing. In
a subsequent written order, the court found that lower-risk detainees were not likely
to be successful on their claims and were therefore not entitled to bail hearings. See
Gomes v. US Dep't of Homeland Sec., Acting Sec'y, Civ. No. 20-cv-453-LM, 2020 WL
3577302, at *7-8 (D.N.H. July 7, 2020).

1972); Mapp v. Reno, 241 F.3d 221, 226 (2d Cir. 2001). It is this finding that the parties seek to vacate.

Meanwhile, on May 4, 2020, the court provisionally certified the proposed class for the purpose of facilitating expedited bail hearings,[3] see Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec., Civ. No. 20-cv-453-LM, 2020 DNH 072, 2020 WL 2113642, at *1 (D.N.H. May 4, 2020), and began holding bail hearings that same day. As of the date of this order's issuance, the court has conducted seventeen bail hearings, releasing ten persons.

On May 15, 2020, defendants moved to dismiss on several grounds, including lack of standing, the cognizability of plaintiffs' claims in a habeas petition, failure to state a claim upon which relief may be granted, and for noncompliance with Rule 8 of the Federal Rules of Civil Procedure. The court denied defendants' motion on June 16, 2020. See Gomes v. US Dep't of Homeland Sec., Acting Sec'y, Civ. No. 20-cv-453-LM, 2020 WL 3258627, at *5 (D.N.H. June 16, 2020). On August 7, 2020, defendants moved for partial reconsideration of the denial of their motion to dismiss. The court denied that motion on September 28, 2020. See Gomes v. US Dep't of Homeland Sec., Acting Sec'y, 561 F. Supp. 3d 198, 199-200 (D.N.H. 2020).

Following resolution of a dispute in early 2021 as to whether plaintiffs in this habeas action were entitled to discovery, see Gomes v. U.S. Dep't of Homeland Sec., Acting Sec'y, 559 F. Supp. 3d 8 (D.N.H. 2021), this case was on track for the filing of

---

[3] The court would later grant final certification to the class. See Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec., 561 F. Supp. 3d 93, 97-98 (D.N.H. 2021).

dispositive motions in April 2021 and a bench trial in August 2021. However, on April 14, 2021, the parties appeared for a status conference and informed the court that they were engaged in settlement negotiations. The case has essentially been stayed since that point. During the conference, the court instructed the parties to jointly file a proposed scheduling order containing deadlines for the submission of dispositive motions and a date for a bench trial in the event negotiations broke down. The parties have routinely filed status reports with the court since that time. For various reasons, reaching a final agreement on terms of the settlement took far longer than anticipated.

On November 18, 2024, the parties filed a joint motion for preliminary approval of their proposed settlement agreement and to schedule a fairness hearing. Doc. no. 805. The parties attached their proposed settlement agreement to their motion. Doc. no. 805-1. The settlement agreement contains numerous terms designed to limit the introduction and spread of COVID-19 within SCDOC, including terms related to testing, isolation of detainees testing positive, periodic testing of a sample of detainees, masks, enhanced cleaning procedures, anti-viral medication, air quality, vaccination, and the development of outbreak protocols. Under the terms of the agreement, it expires eight months after this court grants final approval to the settlement.

The proposed settlement agreement also provides for vacatur of the court's May 14, 2020, deliberate indifference finding. See id. at 14. It states the parties' agreement "that exceptional circumstances exist for the vacatur of" this finding, and

4

"that these exceptional circumstances outweigh the consideration of depriving the public and the judicial system of the precedential value of" the court's finding. Id. Neither the proposed settlement agreement nor the parties' joint motion set forth what these exceptional circumstances are, however. The court therefore instructed the parties to submit a joint or separate memoranda of law regarding the court's authority to vacate its deliberate indifference finding and why the court should do so in the circumstances of this case. See doc. no. 806. The parties thereafter submitted a joint addendum and memorandum of law addressed to this issue.[4]

## DISCUSSION

The parties do not identify the Federal Rule of Civil Procedure under which they seek vacatur. Presumably, they move under Rule 54(b),[5] which permits the court to modify an interlocutory order at any time prior to entry of judgment. See Fed. R. Civ. P. 54(b); Lycos, Inc. v. Blockbuster, Inc., C.A. No. 07-11469-MLW, 2010 WL 5437226, at *2 (D. Mass. Dec. 23, 2010). However, while Rule 54(b) empowers the court to modify its interlocutory deliberate indifference finding, "there is little

---

[4] The court also directed the parties to address whether plaintiffs' claims are moot in light of advancements in treatment for COVID-19 and protocols already implemented at SCDOC for civil immigration detainees. Based on the contentions in the parties' memorandum, the court is satisfied that those circumstances have not rendered this action moot.

[5] Rule 60(b)(6) also allows for vacatur of a final judgment in extraordinary circumstances, but it does not apply here since the court's deliberate indifference finding was not rendered in a final judgment. See Farr Man & Co., Inc. v. M/V/ Rozita, 903 F.2d 871, 874 (1st Cir. 1990) ("It is, by this time, well settled that Rule 60 only applies to final judgments.").

authority describing when, if ever, the court should exercise this power to grant vacatur of a non-final order in connection with settlement." Lycos, 2010 WL 5437226, at *2. After directing the parties to brief the issue, they jointly assert that the applicable standard is set forth in U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18 (1994). Bancorp involved an appellate court considering whether to vacate a lower court's judgment. While some courts have held that Bancorp does not apply to a district court considering whether to vacate one of its own rulings, see, e.g., Lycos, 2010 WL 5437226, at *2-3, the court will apply it here given the parties' agreement, which finds support in the law,[6] see, e.g., Valero Terrestrial Corp. v. Paige, 211 F.3d 112, 120-21 (4th Cir. 2000) (holding that Bancorp applies to a district court's decision to vacate its own ruling); Nilssen v. Motorola, Inc., Nos. 93 C 6333, 96 C 5571, 2002 WL 31369410, at *2 (N.D. Ill. Oct, 21, 2002) (same); cf. Bancorp, 513 U.S. at 28 (strongly suggesting that Bancorp's rationale turns on the fact of settlement and not at what level of review settlement occurs); Da Graca v. Souza, 2 F.4th 1, 2 (1st Cir. 2021) (memorandum opinion)

---

[6] Whether Bancorp's test applies, or whether a more flexible equitable inquiry applies, is probably not dispositive. In either case, vacatur remains an "extraordinary remedy," Doe v. Hreib, 384 F. Supp. 3d 137, 139 (D. Mass. 2019), and the considerations articulated in Bancorp would remain relevant to a more flexible inquiry, see Lycos, 2010 WL 5437226, at *3. See also In re Ruiz, 83 F.4th 68, 77 (1st Cir. 2023) ("Ultimately, the decision whether to vacate is 'rooted in equity' and 'turns on the conditions and circumstances of the particular case.'" (quoting Azar v. Garza, 138 S. Ct. 1790, 1792 (2018))); Heredia v. Roscoe, No. 21-cv-198-PB, 2023 DNH 135, 2023 WL 7017716, at *3 (D.N.H. Oct. 25, 2023) (declining to resolve whether Bancorp applies to district court's vacatur of a judgment under Rule 60(b) "because, under any standard, the existence of exceptional circumstances and the public interest are of paramount importance").

("There is no reason why [Bancorp]'s logic does not apply when deciding if an appellate court should vacate its own opinion.").

Vacatur is an equitable remedy. Bancorp, 513 U.S. at 25. When a case becomes moot on appeal as a result of happenstance or based on the unilateral action of the party who prevailed below, the party who did not prevail below is usually entitled, as an equitable matter, to vacatur of the appealed decision. See United States v. Munsingwear, 340 U.S. 36, 39-40 (1950). "A party who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." Bancorp, 513 U.S. at 25. In other words, when a party appeals an adverse decision but is prevented from reaching an appellate determination on the merits through no fault of his own, the equities usually require vacatur of the appealed decision. Id.

Bancorp announced an exception to this general rule when mootness results from a voluntary settlement. "Where mootness results from settlement . . . the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur. The judgment is not unreviewable, but simply unreviewed by his own choice." Id. This rule recognizes "the lack of equity of a litigant who has voluntarily abandoned review." Id. at 28. Thus, when a party voluntarily forfeits further judicial review of an adverse ruling by entering into a settlement agreement, they lack "equitable entitlement to the extraordinary remedy of vacatur." Id. at 26.

7

Bancorp's rationale also underscores that the public and the legal community have an interest in enduring judicial decisions; such decisions "are presumptively correct" and "are not merely the property of private litigants" to be contracted away. Id. In addition, allowing the parties to "collateral[ly] attack" an adverse ruling through the simple expedient of settlement would "disturb the orderly operation of the federal judicial system" by circumventing the primary route prescribed by Congress for litigants to seek review and reversal of judicial decisions—appeal as of right and, if necessary, seeking a writ of certiorari. Id. at 27.

Ultimately, Bancorp held that, when a party settles a lawsuit and thereby renders moot an adverse judicial decision, courts presume that the party is not entitled to vacatur of the adverse decision. See id. at 29. But the Court left open the possibility that, where "exceptional circumstances" exist, vacatur may sometimes be justified despite settlement. Id. While the Court did not provide examples of exceptional circumstances that could justify vacatur in these circumstances, it did make clear that the parties' mere agreement for vacatur is insufficient. Such an agreement does not "diminish[] the voluntariness of the abandonment of review" or lessen the public's interest in the orderly maintenance of judicial opinions. Id.

Here, because the parties request that this court vacate a prior finding pursuant to a settlement agreement, this case falls squarely within Bancorp's presumption against vacatur. The parties resist this conclusion, however. They assert that, in Bancorp, it was critical to the Supreme Court's reasoning that the case was already moot at the time vacatur was sought, whereas here the action will

not be moot unless and until the court approves the proposed settlement. According to the parties, Bancorp's holding rests on the fact that the court lost Article III jurisdiction before vacatur was requested. Having lost jurisdiction, the parties contend, it is unsurprising that that Bancorp "concluded that exceptional circumstances must be present to justify any further court action." Doc. no. 817 at 8.

The court is not persuaded. The parties' argument is premised on the notion that a court lacks the power to take any action on a case once it becomes moot. Not so. Bancorp itself recognizes that, even after jurisdiction is lost on mootness grounds, the court may still "make such disposition of the whole case as justice may require." Bancorp, 513 U.S. at 21 (quoting Walling v. James V. Reuter, Co., Inc., 321 U.S. 671, 677 (1944)). Were it otherwise, a federal court would lack power even to dismiss a case once it becomes moot, and the suit would remain trapped in a perpetual state of suspended animation. "Article III does not prescribe such paralysis." Id. Thus, it was not material that the suit in Bancorp had become moot at the time the parties requested vacatur, and the parties fail to show that this case falls outside Bancorp's presumption against vacatur. See also, e.g., Neumann v. Prudential Ins. Co. of Am., 398 F. Supp. 2d 489, 492 (E.D. Va. 2005) ("Although the parties in Bancorp, unlike the parties here, settled before seeking vacatur, this distinction is not material; it does not affect the basic principle that post-judgment vacatur should issue only in extraordinary circumstances."); Heredia v. Roscoe, No. 21-cv-198-PB, 2023 DNH 135, 2023 WL 7017716, at *1 (D.N.H. Oct. 25, 2023) (finding no exceptional circumstances for vacatur where parties arrived at a post-

judgment settlement contingent on vacatur of a jury finding and the parties moved for an indicative ruling on a joint motion to vacate in the district court "in order to effectuate their settlement agreement").

Because <u>Bancorp</u>'s presumption applies, the parties must show that there are exceptional circumstances justifying vacatur. They contend that the actions of one of the defendants—SCDOC Superintendent Christopher Bracket—in response to the pandemic constitute exceptional circumstances justifying the extraordinary remedy of vacatur. The parties rightfully observe that COVID-19 posed an unprecedented global health crisis that threatened to confound public health systems, and that penological institutions faced particularly difficult circumstances in safeguarding inmates' health due to the congregate nature of life in jails and prisons. They contend that Superintendent Brackett's leadership and diligence throughout the pandemic—qualities which this court has consistently recognized—allowed SCDOC to successfully implement comprehensive and proactive measures to protect inmates. As a result of Superintendent Brackett's actions, the parties assert, no prisoners at SCDOC died of COVID-19, only a few were hospitalized, and those that were hospitalized recovered quickly. The parties further assert that, if the court's deliberate indifference finding is allowed to stand, it will follow Superintendent Brackett throughout his career and negatively impact his professional life.

Superintendent Brackett's resourcefulness, dedication, and integrity in response to the COVID-19 crisis cannot be overstated. This court has frequently

recognized Superintendent Brackett's efforts. See, e.g., Gomes, 460 F. Supp. 3d at 135. However, the court found—at the pandemic's earliest stage—that plaintiffs were likely to be successful in arguing that defendants were deliberately indifferent to their serious medical needs despite Superintendent Brackett's laudable efforts. See id. at 135, 140-44, 150-51. In short, Superintendent Brackett's actions, while commendable, do not justify vacatur of this court's deliberate indifference finding.

As for asserted reputational harm to the Superintendent if the court's finding is allowed to stand, the parties' assertions are speculative and non-specific. They do not identify any discrete adverse consequences that Superintendent Brackett faces as a result of the court's finding. To the contrary, the parties state that Superintendent Brackett has been recognized—and rightfully so, this court hastens to add—as "setting a 'gold standard' for the protection of inmates against the spread of COVID-19." Doc. no. 817 at 11. Mere speculation as to the possibility of unspecified adverse professional consequences flowing from this court's deliberate indifference finding is insufficient to establish exceptional circumstances. Heredia, 2023 WL 7017716, at *3 (concluding that the possibility a police officer could be placed on New Hampshire's exculpatory evidence schedule as a result of excessive force verdict was speculative and did not constitute an exceptional circumstance justifying vacatur).

Moreover, regardless of whether the court vacates its deliberate indifference finding, the court's opinion rendering the finding would remain publicly available for all to see. See In re Renfrow, No. 22-cv-00381-SH, 2022 WL 17668704, at *10

(N.D. Okla. Dec. 14, 2022) ("Whether [the orders] are vacated or not, they retain some persuasive authority and will remain publicly available online for anyone who wishes to cite them for such."). And since a federal district court's orders lack the force of binding precedent, as a legal matter vacatur of the deliberate indifference finding would only impact its res judicata or preclusive effect. See Vertex Surgical, Inc. v. Paradigm Biodevices, Inc., 648 F. Supp. 2d 226, 231-32 (D. Mass. 2009). The deliberate indifference finding would have exactly as much precedential force after vacatur as it does today. Thus, the parties have not only failed to articulate any concrete harms Superintendent Brackett stands to suffer as a result of the deliberate indifference finding—they have also failed to show how vacatur would abate any such harms.

The parties do not argue that there are any other exceptional circumstances justifying vacatur. They do not argue, for example, that their proposed settlement is contingent on vacatur, see, e.g., Motta v. Dist. Dir. of INS, 61 F.3d 117, 118 (1st Cir. 1995) (per curiam), or that defendants would otherwise continue to pursue judicial review of the deliberate indifference finding but for some entity pressuring them to settle, see, e.g., Doe v. Hreib, 384 F. Supp. 3d 137, 139 (D. Mass. 2019). Because it is the parties' burden to show vacatur is appropriate, the court will not consider whether vacatur could be justified in this case on some other basis.

Even if the parties had identified exceptional circumstances, however, the public interest would counsel against vacatur. See Bancorp, 513 U.S. at 26 (explaining that a federal court considering vacatur must "take account of the public

interest"); Diffenderfer v. Gomez-Colon, 587 F.3d 445, 451 (1st Cir. 2009) ("When the losing party's voluntary action causes the case to become moot . . . vacatur is appropriate only when it would serve the public interest."). While vacatur would not impact the precedential effect of the court's deliberate indifference finding, it would nevertheless "deprive[] the public of the full measure of a reasoned public act." Vertex, 648 F. Supp. 2d at 236. The public could assume from vacatur that the court's finding turned out to be legally or factually incorrect—which is not the case. See In re Mem'l Hosp. of Iowa Cnty., Inc., 862 F.2d 1299, 1302 (7th Cir. 1988) (vacatur "clouds and diminishes the significance of the holding").

More fundamentally, "federal courts exist not just to bring peace between warring parties, but more importantly to give expression and force to the rules and principles (and hence values) embodied in the governing law." Neumann, 398 F. Supp. 2d at 493. This is all the truer when, as here, the ruling at issue concerns a constitutional claim. See Heredia, 2023 WL 7017716, at *4. In this case, the court found that plaintiffs were likely to be successful in arguing that government officials exhibited deliberate indifference to their constitutional obligation to provide the civil detainees at highest risk for severe disease and death from the virus with basic safeguards to protect their health. The public has an interest in knowing when government actors fall short of the Constitution's requirements. Id. Given the fact that vacatur could undermine public confidence in the accuracy of the court's constitutional ruling, the public interest weighs against vacatur.

Finally, vacatur runs counter to the goals of judicial economy. See id. (denying vacatur given "the significant judicial resources that have already been expended in resolving this case"). Substantial judicial resources were expended on this case. The court conducted seventeen bail hearings, nearly all of which required the substantial expenditure of resources by the court and its personnel. The very reason plaintiffs were entitled to bail hearings was because of the finding the parties now seek to vacate. See Gomes, 460 F. Supp. 3d at 152 ("Having held that high-risk petitioners are likely to succeed on the merits of their deliberate indifference claim, the court concludes that the risk that COVID-19 presents to high-risk detainees is an extraordinary circumstance that justifies a bail hearing."). Vacatur would "undermine the public's interest in the productive use of a court's time and resources." Heredia, 2023 WL 7017716, at *4 (quoting Clarke v. Castro, No. 10 Civ. 6330 (HBP), 2013 WL 686680, at *4 (S.D.N.Y. Feb. 26, 2013)).

Ultimately, given the parties' failure to show the existence of exceptional circumstances and the fact that the public interest weighs against vacatur, the parties have not demonstrated that the extraordinary remedy of vacatur is warranted. The court will therefore deny the parties' joint motion for preliminary approval of the settlement agreement—which contains the vacatur provision at issue here—without prejudice. Within fourteen days of this order's issuance, the parties may file a renewed motion for preliminary approval of a new settlement agreement. The court will expeditiously consider whether it can grant preliminary approval to any modified settlement agreement. See, e.g., Rapuano v. Trs. of

14

Dartmouth Coll., 334 F.R.D. 637, 654 (D.N.H. 2020). If no renewed motion is filed within fourteen days, the court will schedule a status conference with the parties to address how this case will proceed.

## CONCLUSION

The parties' joint motion for preliminary approval of their settlement agreement (doc. no. 805) is denied without prejudice. Within fourteen days, the parties may file a renewed motion for preliminary approval along with a new settlement agreement. If no renewed motion is filed within that time, the court will schedule a status conference.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

December 19, 2024

cc:    Counsel of Record