UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Marcus Vinicius Giotto, et al.

    v.

US Department of Homeland
Security, Secretary, et al.

Civil No. 20-cv-453-LM
Opinion No. 2025 DNH 001 P

**O R D E R**

In this class action habeas case brought at the onset of the COVID-19 pandemic, civil immigration detainees confined at the Strafford County Department of Corrections ("SCDOC") asserted that conditions of confinement at SCDOC violated their constitutional rights to be free from an unacceptable risk that they would contract COVID-19 and suffer severe illness. Presently before the court is the parties' renewed, assented-to motion for preliminary approval of their proposed settlement agreement and for a fairness hearing.[1] Doc. no. 827. For the following reasons, the parties' motion (doc. no. 827) is granted.

---

[1] The court denied without prejudice the parties' original motion for preliminary approval of a settlement agreement that would have required the court to vacate a finding that conditions of confinement at SCDOC likely violated plaintiffs' constitutional rights. See Giotto v. US Dep't of Homeland Sec., Sec'y, --- F. Supp. 3d ----, 2024 WL 5170098, at *1 (D.N.H. Dec. 19, 2024). The parties' new settlement agreement omits the vacatur provision that the court found unwarranted. See doc. no. 827-1.

## BACKGROUND

On April 17, 2020, plaintiffs filed an amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, and a complaint for declaratory and injunctive relief on behalf of themselves and a putative class of civil immigration detainees housed at SCDOC. The amended petition sought to enforce the putative class members' due process rights, alleging that civil immigration detainees at SCDOC were being detained in conditions that put them at substantial risk of harm due to COVID-19. Plaintiffs sought injunctive relief requiring defendants to implement public health guidance and protocols designed to achieve social distancing and prevent the transmission of COVID-19.

On May 1, 2020, following an evidentiary hearing, the court orally ruled that civil immigration detainees at SCDOC with medical conditions placing them at high risk from COVID-19 were constitutionally entitled to bail hearings. On May 14, 2020, the court issued a written opinion memorializing its May 1 order. See Gomes v. U.S. Dep't of Homeland Sec., Acting Sec'y, 460 F. Supp. 3d 132 (D.N.H. 2020). In that order, the court explained that civil immigration detainees with high-risk medical conditions were constitutionally entitled to bail hearings pending resolution of this action because they were likely to be successful in arguing that defendants were deliberately indifferent to the risk that conditions at SCDOC (as of May 2020) exposed such detainees to an unacceptable risk of death or serious illness from

COVID-19.[2] See id. at 150-52; see also Glynn v. Donnelly, 470 F.2d 95, 98 (1st Cir. 1972); Mapp v. Reno, 241 F.3d 221, 226 (2d Cir. 2001).

Meanwhile, on May 4, 2020, the court provisionally certified the proposed class for the purpose of facilitating expedited bail hearings,[3] see Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec., Civ. No. 20-cv-453-LM, 2020 DNH 072, 2020 WL 2113642, at *1 (D.N.H. May 4, 2020), and began holding bail hearings that same day. As of the date of this order's issuance, the court has conducted seventeen bail hearings, releasing ten persons.

On May 15, 2020, defendants moved to dismiss on several grounds, including lack of standing, the cognizability of plaintiffs' claims in a habeas petition, failure to state a claim upon which relief may be granted, and noncompliance with Rule 8 of the Federal Rules of Civil Procedure. The court denied defendants' motion on June 16, 2020. See Gomes v. US Dep't of Homeland Sec., Acting Sec'y, Civ. No. 20-cv-453-LM, 2020 WL 3258627, at *5 (D.N.H. June 16, 2020). On August 7, 2020, defendants moved for partial reconsideration of the denial of their motion to dismiss. The court denied that motion on September 28, 2020. See Gomes v. US Dep't of Homeland Sec., Acting Sec'y, 561 F. Supp. 3d 198, 199-200 (D.N.H. 2020).

---

[2] The court left open the question of whether civil immigration detainees without high-risk medical conditions were likely to be successful in so arguing. In a subsequent written order, the court found that lower-risk detainees were not likely to be successful on their claims and were therefore not entitled to bail hearings. See Gomes v. US Dep't of Homeland Sec., Acting Sec'y, Civ. No. 20-cv-453-LM, 2020 WL 3577302, at *7-8 (D.N.H. July 7, 2020).

[3] The court would later grant final certification to the class. See Gomes v. Acting Sec'y, U.S. Dep't of Homeland Sec., 561 F. Supp. 3d 93, 97-98 (D.N.H. 2021).

Following resolution of a dispute in early 2021 as to whether plaintiffs in this habeas action were entitled to discovery, see Gomes v. U.S. Dep't of Homeland Sec., Acting Sec'y, 559 F. Supp. 3d 8 (D.N.H. 2021), this case was on track for the filing of dispositive motions in April 2021 and a bench trial in August 2021. However, on April 14, 2021, the parties appeared for a status conference and informed the court that they were engaged in settlement negotiations. The case has essentially been stayed since that point. During the conference, the court instructed the parties to jointly file a proposed scheduling order containing deadlines for the submission of dispositive motions and a date for a bench trial in the event negotiations broke down. The parties have routinely filed status reports with the court since that time. For various reasons, reaching a final agreement on terms of the settlement took far longer than anticipated.

On January 2, 2025, the parties filed the instant assented-to motion for preliminary approval of their proposed settlement agreement and to schedule a fairness hearing. Doc. no. 827. The proposed settlement agreement is attached to their motion. Doc. no. 827-1. The settlement agreement contains numerous terms designed to limit the introduction and spread of COVID-19 within SCDOC, including terms related to testing, isolation of detainees testing positive, periodic testing of a sample of detainees, masks, enhanced cleaning procedures, anti-viral medication, air quality, vaccination, and the development of outbreak protocols. Under the terms of the agreement, it expires eight months after this court grants final approval to the settlement.

## DISCUSSION

"The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The court's role in the settlement approval process is to serve as a fiduciary for the absent class members, and to protect them from an unjust or unfair settlement. Grenier v. Granite State Credit Union, 344 F.R.D. 356, 366 (D.N.H. 2023).

Court approval of a class action settlement proceeds in two stages. Rapuano v. Trs. of Dartmouth Coll., 334 F.R.D. 637, 642 (D.N.H. 2020). First, the parties present a proposed settlement to the court for "preliminary approval." 4 William B. Rubenstein, Newberg and Rubenstein on Class Actions § 13.10 (6th ed.). At the preliminary approval stage, the court must determine whether it "will likely be able to" grant final approval to the settlement proposal under Rule 23(e)(2) of the Federal Rules of Civil Procedure—i.e., the court must find it likely that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(1)(B), (2); see Rapuano, 334 F.R.D. at 642-43. In addition, if the court has not yet certified the class, the preliminary approval stage typically involves a request from the parties that the court provisionally certify the class for purposes of settlement. See Rubenstein, supra § 13.10.

If the court is (1) satisfied that it will likely be able to grant final approval to the proposed settlement and (2) the class has previously been certified or the court provisionally certifies the class for purposes of settlement, then the court should

"direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B); see Rapuano, 334 F.R.D. at 642. After notice to the class, the court holds a "fairness hearing" at which class members may appear to support or object to the proposed settlement. See Rubenstein, supra § 13.10.

At the second stage of the inquiry, the court determines whether it can grant final approval of the proposed settlement. See id. A court may grant final approval only if it concludes the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In conducting this analysis, the court must consider the adequacy of the relief afforded, whether the class representatives and class counsel have adequately represented the class, whether the proposal was negotiated at arm's length, and whether the proposal treats class members equitably relative to each other. Id.

Here, the parties' joint motion requests preliminary approval of their proposed settlement and to schedule a fairness hearing. The court has already certified the class and the parties' proposed settlement does not require the court to revisit the issue of certification because the proposal does not "call[] for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23(e)(1), advisory committee notes to 2018 amendments. Therefore, to preliminarily approve the proposed settlement, the court must consider whether it will likely be able to find that the settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23(e)(1)(B), (2).

6

I.      <u>The Court Will Likely Be Able to Find That the Settlement Is Fair, Reasonable, and Adequate</u>

"This threshold may be met by showing that the proposed settlement falls 'within the range of possible final approval' and that it is not 'illegal or collusive.'" Rapuano, 334 F.R.D at 654 (quoting Scott v. First Am. Title Ins. Co., No. 06-CV-286-JD, 2008 WL 4820498, at *3 (D.N.H. Nov. 5, 2008)). "There is a presumption that a negotiated settlement is within the range of reasonableness '[w]hen sufficient discovery has been provided and the parties have bargained at arms-length.'" Wright v. S. N.H. Univ., 565 F. Supp. 3d 193, 206 (D.N.H. 2021) (quoting City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996)).

As an initial matter, the presumption of reasonableness applies in this case because the record establishes that counsel for the parties negotiated the proposed settlement at arm's length over the course of a long period of time following sustained litigation, adversarial testing of plaintiffs' claims, and the exchange of information and discovery. See Wright, 565 F. Supp. 3d at 206 (applying presumption where the parties negotiated "at arm's length, at times with the assistance of an experienced and neutral mediator, following a thorough investigation and mutual exchange of evidence"); Grenier, 344 F.R.D. at 366-67 (applying presumption where parties engaged in a "months-long negotiation process" and engaged in written discovery and depositions enabling plaintiffs "to understand the merits of their case"). Thus, the court's inquiry begins by presuming the proposed settlement is reasonable.

Nothing in the proposed settlement or the record of this litigation rebuts that presumption, and a review of the parties' proposed settlement establishes that the court will likely be able to make a final determination that its terms are fair, adequate, and reasonable. The proposed settlement contains provisions addressing:

- The implementation of policies and procedures for combating the spread of COVID-19 at SCDOC;

- Compliance with CDC Guidance on COVID-19 mitigation at SCDOC;

- The administration of COVID-19 tests to consenting detainees entering SCDOC;

- A routine observation period and isolation from general population for detainees entering SCDOC who decline a COVID-19 test and who are exhibiting symptoms consistent with COVID-19;

- Isolation of persons testing positive for COVID-19;

- The provision of masks to all detained persons;

- Use of enhanced cleaning procedures;

- The timely offering of anti-viral drugs to individuals diagnosed with COVID-19 when clinically appropriate;

- Maintaining an adequate stock of COVID-19 testing supplies;

- The proper operation of HVAC systems to provide acceptable indoor air quality;

- Maintaining a reasonable supply of COVID-19 vaccines and administering such vaccines to consenting, medically eligible, newly arriving detainees as soon as possible but no later than within 14 days of intake; and

- Providing education around COVID-19 vaccines as well as other educational opportunities regarding COVID-19.

These terms serve the interests of all parties, and the agreement achieves positive results for the class members. The relief sought is consistent with this court's prior orders protecting medically vulnerable individuals at SCDOC who are at higher risk of severe illness from COVID-19, and the proposed settlement ensures that SCDOC imposes measures that are likely to mitigate the spread of COVID-19 for an additional eight-month period from final approval of the settlement.

Moreover, the eight-month lifespan of the settlement appears reasonable. While a longer lifespan would undoubtedly provide greater benefits to class members, the settlement's timed expiration is consistent with the lessened risk COVID-19 poses to class members in 2025 as compared to the time this action was brought in April 2020, and is also consistent with the fact that the federal government has terminated the state of emergency caused by COVID-19. See Zeke Miller, Biden Ends COVID National Emergency After Congress Acts, Associated Press (Apr. 10, 2023).[4] The proposed settlement also spares class members the uncertainty of further litigation, including motions for summary judgment and a potential trial.

In addition, the court will likely be able to find that the class representative has adequately represented the class. Class representative Marcus Giotto was formerly detained as a civil immigration detainee at SCDOC until the court

---

[4] Available at: https://apnews.com/article/joe-biden-covid19-coronavirus-national-emergency-e3a52722b57a6b4f24187426c27b3b39.

released him after a bail hearing. His release does not prevent him from being an adequate class representative. See Cohen v. Brown Univ., 16 F.4th 935, 947 (1st Cir. 2021) ("[A]n inquiring court should not invoke any presumption against allowing a plaintiff whose own claim has become moot to continue in place as a class representative but, rather, should consider the adequacy-of-representation issue on the facts of the particular case."). He seeks "the same remedy . . . based on an identical theory" as the rest of the class. Reid v. Donelan, 297 F.R.D. 185, 191 (D. Mass. 2014). And the parties represent that Giotto has actively participated in this litigation, including by regularly approving settlement proposals, communicating with counsel on the status of the litigation, and consulting with counsel on the management and direction of the litigation. In short, the court will likely be able to find Giotto an adequate class representative.

What is more, the court will likely be able to find that counsel have adequately represented the class. Class counsel have ably identified and investigated the class members' claims. They have significant experience in litigating class actions with a demonstrated record of success in civil rights cases. Counsel have successfully opposed a motion to dismiss, obtained class certification, succeeded in bringing a motion for discovery (which is not the norm in habeas actions), obtained relief in the form of bail hearings for medically vulnerable detainees, and conducted extensive negotiations to secure meaningful relief for class members in the form of the parties' proposed settlement agreement. Thus, it is more

than likely the court will be able to find that counsels' representation has been adequate.

Finally, it is likely the court will be able to find that the proposed settlement treats class members equitably. No class member will receive unduly favorable treatment. To the contrary, the conditions described in the settlement agreement apply equally to all civil immigration detainees at SCDOC. Thus, there are no concerns at the preliminary approval stage about inequitable treatment of class members.

For all these reasons, the court grants preliminary approval of the parties' proposed settlement agreement, pending final approval following a fairness hearing. The court notes that, although the proposed settlement appears fair, adequate and reasonable at this preliminary approval stage, the parties should be prepared to further explain and defend the proposed settlement at the fairness hearing.

II.     The Parties' Proposed Notice Is Sufficient

Having granted preliminary approval to the parties' proposed settlement, the court must next consider whether the parties' proposed notice of the settlement is sufficient. Fed. R. Civ. P. 23(e)(1)(B). Under Rule 23(e)(1)B), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."

The court has reviewed the parties' proposed notice. See doc. no. 827-1 at 18. The proposed notice describes the nature of the action, the definition of the class, applicable claims, issues, and defenses, explains that a class member may enter an

appearance through an attorney of their own choosing, explains the process for objecting to the proposed settlement, and also explains the binding nature of a class judgment on class members. The court finds that the proposed notice adequately informs class members of the proposed settlement and their rights thereunder.

The parties' agreement provides that the proposed notice will be posted at SCDOC in English, Spanish, and Portuguese. The parties contend that this affords greater notice than cases in which courts have found online notice to be sufficient. However, the parties note that the class members form a discrete and limited group, are easily identifiable, and are in one location: SCDOC. Therefore, in addition to posting copies of the notice at SCDOC, the court finds that reasonable notice to class members in this case requires that class members be provided with individual copies of the proposed notice in English, Spanish, or Portuguese as appropriate. Defendants shall cooperate with class counsel in identifying class members and in facilitating the provision of notice on an individual basis. Class counsel shall provide notice to class members in the manner described above as soon as practicable but in no event later than fourteen (14) days from the date of this order's issuance. At or before the fairness hearing, class counsel shall file an affidavit establishing proof of dissemination of notice to the class.

## CONCLUSION

For all these reasons, the court grants the parties renewed, assented-to motion for preliminary approval of their proposed settlement agreement and to schedule a fairness hearing (doc. no. 827). The court directs class counsel to

distribute the proposed notice to the class as outlined above. The court will hold a fairness hearing on March 11, 2025 at 10:00 a.m. The parties shall file any pleadings in support of final approval, including any motions for attorney fees and costs, no later than February 25, 2025.

    SO ORDERED.

                                                                              _____  
                                                                              Landya McCafferty  
                                                                              United States District Judge

January 8, 2025

cc:    Counsel of Record